## SMITH et al. v. ORPHEUM AMUSEMENT COMPANY et al.

No. 2360.   Decided July 23, 1912 (125 Pac. 684).

CORPORATIONS—OFFICERS—LIABILITY—EVIDENCE.   In an action for architects' services in remodeling a theater for a corporation, evidence *held* to require a finding that defendants, who were officers of the corporation, in employing plaintiffs, acted for the corporation and not individually, and were therefore not individually liable for plaintiff's services.

APPEAL from District Court, Second District; *Hon. N. J. Harris,* Judge.

Action by J. A. Smith and another against the Orpheum Amusement Company and others.

Judgment for plaintiffs against defendant J. H. Garrett alone.   He appeals.

REVERSED AND REMANDED FOR NEW TRIAL.

*Gustin, Gillette & Brayton* for appellant.

*C. R. Hollingsworth* for respondents.

STRAUP, J.

The plaintiffs, partners in business, brought this action against the Orpheum Amusement Company, a corporation, and Scowcroft and Garrett, to recover a balance due for services rendered at the alleged instance and request of the defendants, in preparing plans and specifications for, and superintending the remodeling of, a theater building known as the Grand Opera House in Ogden, and thereafter known as the Orpheum Theater Building.   The case was tried to the court without a jury.   At the conclusion of plaintiffs' evidence the court granted a nonsuit as to the Orpheum Amusement Company, and overruled a similar motion as to

the defendants Scowcroft and Garrett. Upon all the evidence, the court found that the services were rendered at the special instance and request of Garrett alone, and rendered a judgment against him alone. Garrett appeals.

He complains of the findings and the judgment. We think they are not supported by the evidence. The court granted the nonsuit as to the Orpheum Amusement Company partly because the motion apparently was not resisted, and partly upon the view entertained by the court that the services were not engaged by nor rendered for it. If the corporation was not itself liable, and if either of the defendants, Garrett or Scowcroft, were personally liable, it, upon the record, is difficult to understand on what theory the court found Garrett alone liable, for the evidence without dispute shows that the services were rendered equally at the request and direction of both. The material and pertinent question in the case is whether the services were rendered at the request and direction of Garrett and Scowcroft as managers and officers of the corporation and for it, or for themselves in their individual capacity, or without a disclosure that they were acting for the corporation and not for themselves. We think the evidence, without substantial dispute, shows that the plaintiffs rendered the services for the corporation, and that they dealt with Garrett and Scowcroft as managers and officers of the corporation. The plaintiffs alleged, and the evidence shows, that the Orpheum Amusement Company was organized and created on the 19th day of April, 1909. On that day its articles of incorporation were filed. Scowcroft then, and at the time of the trial, was the president of the corporation, David C. Eccles vice president, Garrett the secretary, and John Pingree the treasurer. The remodeling of the theater building was done by the corporation, and for its use and benefit, and not for the individual use or benefit of Scowcroft and Garrett. There is not a scintilla of evidence to show the contrary. Scowcroft and Garrett engaged the services of the *plaintiffs* to draw plans and specifications for and to superintend the remodeling. They did that on behalf of the corporation and for its use and benefit, and not for the individ-

ual use or benefit of either Scowcroft or Garrett. That also is undisputed. But one of the plaintiffs, Hodgson, claims that when the plaintiffs were first employed, and when they began the preparation of the plans and specifications, he did not know that the remodeling was to be done by the corporation; that he understood it was for the benefit of Garrett and Scowcroft; and that Garrett first spoke to him about it, at two different times in March, the first time on the 12th, and the second about two weeks later, before the corporation was organized. He testified that Garrett then instructed him "to make measurements in regard to certain data relative to the desired results they wanted to accomplish in the opera house. No further work was done at that time, and the next meeting I had with Garrett was in company with Scowcroft (in June). At that time I was told to go ahead and remodel the opera house for an orpheum. I immediately returned to the office, and Mr. Smith (an employee of plaintiffs) and I proceeded forthwith to take the measurements of the opera house. Mr. Smith prepared the workings and drawings, after which they were blue printed." Thereafter the work was done and completed in October. Some of the plans and specifications bore the indorsements, made in plaintiffs' office, "For the managers of the Orpheum Company." Partial payments were made to the plaintiffs by check in the name, and signed by the treasurer of the Orpheum Amusement Company. Notwithstanding the indorsements, and the check which was received by Hodgson in July, he nevertheless testified that he, in August, had no knowledge that the work was being done by the amusement company. But Smith, his partner, also a witness on behalf of the plaintiffs, testified that he had knowledge that the work was done by the Orpheum Amusement Company, and for its benefit, and not for Scowcroft and Garrett, and that Hodgson, his associate, so informed him. Both Hodgson and Smith testified that, until they commenced their suit, neither had looked to nor asked either Garrett or Scowcroft for payment. Hodgson further testified that "throughout the entire trans-

action I never asked Garrett or Scowcroft to pay this bill individually, and at first I charged it to the managers of the Orpheum Company, and afterwards to the Orpheum Amusement Company when we learned the official name" of the company.

Smith, the other plaintiff, testified that the principal plans and specifications were prepared June 3, 1909. He was asked and he answered: "Q. Did you know there was an Orpheum Company at that time? A. Well, I didn't make inquiry in regard what company—how the company was formed. I knew that Scowcroft and Garrett were behind it. Q. You knew there was a company though, did you? A. I knew they were in a company; yes, sir. Q. You knew that you were doing work for a company? A. Yes, sir. Q. And you knew that Garrett and Scowcroft were acting as managers of that company at that time? A. Yes, sir. Q. And you knew you were dealing with them as managers of the Orpheum Company at that time, didn't you? A. Yes. Q. How long before that time did you know about it? A. I couldn't say. Q. As a matter of fact, you knew about it all the time? A. I knew that there was a company, of course; that there was a company that was going to remodel it for the Orpheum circuit. Q. You knew there was a company organized for this when you were first approached on the subject? A. Yes, sir." He further testified that before the plaintiffs commenced work he knew that Eccles, Scowcroft, Garrett, Pingree, and Roy Eccles were connected with the company, and that Garrett and Scowcroft acted as the representatives of some company, and that he obtained this information from his associate Hodgson.

Thus, considering the matter upon the evidence alone of the plaintiffs' it clearly appears that they rendered the services for the corporation and not for Garrett or Scowcroft in their individual capacity. Nor is there any evidence to show that Scowcroft and Garrett, in their individual capacity, either by express promise, or impliedly, promised or agreed

to pay for the services, or in any manner assumed liability for payment of them.

The judgment of the court below is therefore reversed, and the case remanded for a new trial.   Costs to appellant.

FRICK, C. J., and McCARTY, J., concur.